UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KIM LAU,<br><br>                    Plaintiff,<br><br>      vs.<br><br><br>XAVIER BECERRA, Secretary U.S.<br>Department of Health and Human<br>Services,<br><br>                    Defendant. | 4:24-CV-04063-VLD<br><br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS<br>DOCKET NO. 17 |

**INTRODUCTION**

The matter before the court is plaintiff Kim Lau's complaint alleging that defendant Xavier Becerra, Secretary of U.S. Department of Health and Human Services (DHHS), engaged in disability discrimination, age discrimination, race discrimination, and national origin discrimination.  See Docket No. 1, at 8-10. Pending is DHHS's motion to dismiss.  Docket No. 17.  The parties have consented to this magistrate judge handling their case pursuant to 28 U.S.C. § 636(c).

**FACTS**

The following facts are drawn from plaintiff's complaint.  See Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 365 (8th Cir. 2011) (citation omitted)

(noting that courts are "bound to accept as true, for purposes of [a Rule 12(b)(6)] motion, the facts alleged by the plaintiff") (alteration in original).  No imprimatur of the accuracy of these facts is intended by the court.

In October 2017, Doctor Kim Lau accepted a position with the Department of Health and Human Services working in the Winnebago Indian Health Service Hospital (WIHSH) in Winnebago, Nebraska.  See Docket No. 1, at 2-3.  In summer 2018, the Indian Health Service (IHS), an agency of DHHS, ceded control of the hospital and the Winnebago Tribe of Nebraska took over all operations pursuant to the Indian Self-Determination and Education Assistance Act of 1975 (ISDEAA).  Id. at 3-4.  From that point forward, WIHSH operated under the Winnebago Comprehensive Healthcare System (WCHS), an entity formed by the Tribal council.  Id. at 4.  WCHS renamed WIHSH to Twelve Clans Unity Hospital (TCUH).  Id.

Upon WCHS taking control of the hospital, most IHS employees were converted to Tribal employees, while others were allowed to remain IHS employees detailed to the Tribe under special purpose Intergovernmental Personnel Agreements (IPA).  Id.  Dr. Lau elected to remain a Title 38 employee of IHS detailed to the Tribe under a special purpose IPA.  Id.

In July 2020, three people approached Dr. Lau: Dr. Lau's direct supervisor, Dr. Carl Sirio, hospital COO Laura Gamble, and HR director Sandy Francis.  Id. at 5.  They told Dr. Lau that they were concerned about his ability to stay focused and meet the needs of patients.  Id.  On July 23, Sirio, Gamble,

2

and Francis gave Dr. Lau a Memorandum of Expectations (MOE) outlining many of the same concerns.  Id.  In particular, the MOE cited a concern about "[u]nderperformance in clinical productivity in part a result of focus and workflow."  Id.  The MOE required Dr. Lau to "[s]chedule and complete . . . a mandatory meeting the WCHS Employee Assistance Program [] provider"; to work with Gamble and Sirio "to create a scheduling system to increase productivity and client numbers in the podiatry department"; "[c]ompile and discuss recommendations with specific details and timelines to increase processes, efficiencies and quality within the podiatry department"; and to "[c]reate quantifiable goals to begin monitoring and improving performance thresholds."  Id.

On July 28, Dr. Lau called out sick due to pain in his chest and dizziness.  Id. at 6.  He was medically excused from work by his primary care physician for the remainder of the week.  Id.  On August 14, Dr. Lau was diagnosed with a blockage in his left anterior descending artery.  Id.  Dr. Lau was immediately admitted to the hospital, and shortly thereafter underwent a cardiac catheterization to remove the blockage.  Id.

Upon returning to work on August 31, Dr. Lau met with Gamble, Sirio, Francis, and IHS supervisor Matthew McClung.  Id. at 4, 7.  At the meeting, Gamble told Dr. Lau that he was relieved of all of his responsibilities and duties, he was on administrative leave for 60 days, and his special purpose IPA

was terminated effective immediately.  Id. at 7.  Dr. Lau alleges that he was replaced by a white, non-disabled podiatrist under 40 years old.  Id.

On October 14, Dr. Lau requested Equal Employment Opportunity (EEO) counseling from IHS, identifying the TCUH as the place where the allegations occurred and employees Laura Gamble, Danelle Smith, and Carl Sirio, as the responsible management officials (RMOs).  See Docket No. 20-1, at 6, 8, 15-16. On December 3, after the conclusion of EEO counseling, Dr. Lau filed a formal complaint of discrimination.  See Docket No. 20-2.  In his formal complaint, Dr. Lau alleged that the Tribe and its employees discriminated against him because of his national origin, race, age, and disability between July 23, 2020, and his termination, effective on November 22, 2020.  Id. at 1-3.

On December 29, 2021, IHS accepted five claims for investigation.

1. On July 23, 2020, Complainant met with direct supervisor Dr. Carl Sirio, Laura Gamble (Chief Operating Officer) and Sandy Francis (HR Director) and was issued a Memorandum of Expectations.

2. Complainant alleges that claims (based on performance and behavior) made in the Memorandum of Expectations were false and stress from the claims triggered several medical issues to where Complainant was medically excused from work by cardiologist for one week and then hospitalized.

3. On August 24, 2020, Complainant received a second Letter of Memorandum that said that Complainant was continuing to fail to meet expectations inadequately cited from previous Letter of Memorandum.

4. On August 24, 2020, Complainant received a letter from Danelle Smith (Chief Executive Officer of Winnebago Comprehensive Healthcare System) stated [sic] that the Winnebago Tribe of Nebraska has terminated the IPA Agreement with Complainant in Podiatrist

4

position and placed [sic] on paid Administrative Leave as of November 22, 2020.

5. On August 31, 2020, Complainant received a letter from HHS Public Health Service (IHS) notifying Complainant that [sic] position had been abolished and Complainant would be separated from the government November 22, 2020.

Docket No. 20-3, at 1.

On February 17, 2022, IHS issued a final agency decision dismissing Dr. Lau's complaint for failure to state a claim. Docket No. 20-4. IHS explained that Dr. Lau was not "aggrieved" because IHS could offer no relief, since "tribal assumption of a [hospital] is something the IHS cannot stop, challenge, impact, or change." Id. at 2-3. Dr. Lau appealed that ruling to the EEOC Office of Federal Operations, which reversed and remanded for further consideration. Docket No. 20-5, at 1, 4.

On August 30, 2022, IHS issued another acceptance letter, accepting the same five claims for investigation. Docket No. 20-6, at 1. On October 12, 2023, an EEOC judge dismissed Dr. Lau's claims. Docket No. 20-7, at 5. The administrative judge dismissed claims 1-4 for untimely contact with an EEO counselor and dismissed all five claims on the ground that Dr. Lau failed to state a claim. Id. at 3-5. On December 14, 2023, the agency issued a final order adopting the EEOC judge's decision. Docket No. 20-8.

Dr. Lau sued Xavier Becerra, Secretary of DHHS, alleging claims for: (1) disability discrimination under the Rehabilitation Act; (2) age discrimination under the Age Discrimination in Employment Act (ADEA); (3) race

discrimination under Title VII; and (4) national origin discrimination under Title VII.  Docket No. 1 at 1, 8-10.  DHHS now moves to dismiss for failure to state a claim and for lack of jurisdiction.  See Docket No. 17.

## DISCUSSION

DHHS argues two different bases for its motion to dismiss: Federal Rule of Civil Procedure 12(b)(1), which provides for dismissal based on lack of jurisdiction, and Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal for failure to state a claim on which relief can be granted.  These two rules entail different limitations on what evidence may be considered.

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert the defense of lack of subject-matter jurisdiction.  "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' " on jurisdiction.  Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  "In a facial attack, 'a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction.' " Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (quoting Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009)).  "In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).' " Id. (quoting Osborn, 918 F.2d at 729 n.6).

6

The court interprets DHHS's Rule 12(b)(1) challenge as a factual attack because DHHS "challenges the veracity of the facts underpinning subject matter jurisdiction" rather than relying on the facts as alleged in the complaint. See Kerns, 585 F.3d at 193. "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Davis, 886 F.3d at 679 (quoting Osborn, 918 F.2d at 729 n.6). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

## B.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert the defense that a complaint fails to state a claim upon which relief can be granted.

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating a defendant's 12(b)(6) motion, the court accepts "the facts alleged in the complaint as true and grant[s] all reasonable inferences in favor of . . . the nonmoving party." Stufflebeam v. Harris, 521 F.3d 884, 886 (8th Cir. 2008). While courts must accept a plaintiff's factual allegations as true, they "are not required to accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Generally, on a 12(b)(6) motion to dismiss, a court "must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quotations omitted). "The purpose of this rule is to prevent a plaintiff from avoiding an otherwise proper motion to dismiss by failing to attach to the complaint documents upon which it relies." Viera v. Young, No. 4:16-CV-04146-KES, 2017 WL 3447608, at *3 (D.S.D. June 28, 2017), adopted, 2017 WL 3437668 (D.S.D. Aug. 10, 2017) (quotations omitted).

## C.    Standard Applicable to Dr. Lau's Complaint

In its Brief in Support of Defendant's Motion to Dismiss, DHHS invokes Federal Rule of Civil Procedure 12(b)(1). Docket No. 18, at 7. Yet in its Reply Brief, DHHS expressly disclaims reliance on Rule 12(b)(1). Docket No. 30, at 2 n.1 ("Defendant agrees with Dr. Lau that dismissal may not be appropriate under Rule 12(b)(1), but dismissal is appropriate under 12(b)(6)."). Regardless of any disclaimer by DHHS, the court is prohibited from considering DHHS's procedural exhaustion argument under Rule 12(b)(1). "Title VII's charge-filing requirement is not of jurisdictional cast." Fort Bend Cnty. v. Davis, 587 U.S.

541, 550 (2019).  Accordingly, the court has subject-matter jurisdiction over Dr. Lau's complaint even assuming Dr. Lau failed to administratively exhaust his claims.  See Francisco v. Cooper Tire & Rubber Co., No. 4:19-CV-4058, 2019 WL 3937638, at *3 (W.D. Ark. Aug. 20, 2019) ("A plaintiff's failure to comply with the Title VII charge-filing requirement has no impact on a district court's subject matter jurisdiction.").

The court will therefore consider both bases of DHHS's motion to dismiss (lack of administrative exhaustion and failure to state a claim) under Rule 12(b)(6).  That has important implications for what evidence the court may consider in ruling on DHHS's motion.  While a court may consider matters outside the pleadings on a Rule 12(b)(1) motion, see Kerns, 585 F.3d at 193, it may not do so in the Rule 12(b)(6) context, see Enervations, Inc. v. Minnesota Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004).  Importantly, "documents necessarily embraced by the complaint are not matters outside the pleading."  Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (quoting Enervations, 380 F.3d at 1069)).  Nor does a document need to be physically attached to the complaint to be considered.  See Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'") (quoting Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003)).

There are several documents outside the pleadings upon which DHHS relies.  For instance, DHHS relies extensively on the declarations of Debra Sims, Melissa Loebs, and Troy Bad Moccasin.  Docket Nos. 20, 21, & 22.  See, e.g., Shears-Barnes v. Acurian, Inc., No. 4:20-CV-00161-LPR, 2021 WL 1201671, at *2-4 (E.D. Ark. Mar. 29, 2021) (holding that a declaration and corresponding exhibits were not necessarily embraced by the pleadings and therefore could not be considered on a motion to dismiss).

So, what can the court consider on DHHS's motion to dismiss?  Of course, the court may consider Dr. Lau's complaint itself.  The court may also consider documents attached to the complaint.  Owen v. Gen. Motors Corp., 533 F.3d 913, 918 (8th Cir. 2008) (quoting Great Plains Tr. Co. v. Union Pac. R. Co., 492 F.3d 986, 990 (8th Cir. 2007)).  "Also, since district courts may take judicial notice of public records, they may properly consider public records on a motion to dismiss."  United States v. Fink, 393 F. Supp. 2d 935, 939 (D.S.D. 2005) (citations omitted).

Accordingly, the court will consider: (1) Dr. Lau's complaint, Docket No. 1; (2) Dr. Lau's EEOC Counselor's Report, Docket No. 20-1; (3) Dr. Lau's IHS Complaint Form for Employment Discrimination, Docket No. 20-2; (4) Dr. Lau's DHHS IHS Final Agency Decision, Docket No. 20-4; (5) Dr. Lau's EEOC Appeal Order, Docket No. 20-5; (6) Dr. Lau's Notice of Acceptance of Claims, Docket No. 20-6; (7) Dr. Lau's EEOC Order of Dismissal, Docket No. 20-7; (8) Dr. Lau's Special Purpose Assignment Agreement, Docket No. 22-1; (9) Dr. Lau's TCUH

notice of termination of that agreement, Docket No. 22-2; and (10) Dr. Lau's Notice of Reduction in Force (RIF), Docket No. 22-3.

## D.   Motion to Dismiss for Failure to Administratively Exhaust

"Administrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer." McAlister v. Sec'y of Dep't of Health & Hum. Servs., 900 F.2d 157, 158 (8th Cir. 1990).  This rule applies to Dr. Lau's claims under the Rehabilitation Act, ADEA, and Title VII.  See, e.g., Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005) ("Exhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court."); Nelson v. Charles City Cmty. Sch. Dist., 900 F.3d 587 (8th Cir. 2018) (noting that the exhaustion requirement "also applies where a plaintiff brings a claim under . . . the Rehabilitation Act"); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994) ("Exhaustion of administrative remedies is central to Title VII's statutory scheme . . . .").

DHHS argues that Dr. Lau's "Formal Complaint" challenged only one IHS action, namely:

> Complainant received a letter from [IHS] notifying Complainant that [sic] position had been abolished and Complainant would be separated from the government November 22, 2020.

Docket No. 18, at 10 (quoting Docket No. 20, at 2).  Dr. Lau does not dispute that characterization.  Docket No. 27.  Further, IHS's acceptance letter mirrors

this language.  See Docket No. 20-3 (noting that Dr. Lau complained that he "received a letter from HHS Public Health Service (IHS) notifying [him] that [his] position had been abolished and [he] would be separated from the government November 22, 2020.").  Accordingly, the court will accept DHHS's characterization of the Formal Complaint as true.[1]

DHHS contends that while Dr. Lau challenged an August 31, 2020, letter notifying him that his position had been abolished and that he would be separated from the government, Dr. Lau did not challenge the initiation of the RIF process or the sufficiency of that process.  Docket No. 18, at 10. Accordingly, DHHS argues, Dr. Lau has not administratively exhausted his challenges to the initiation of the RIF or the RIF process itself, and therefore should be barred from bringing those claims.  Id. at 11.

Not so, says Dr. Lau.  He contends that "the initiation of the RIF process and the RIF process are necessarily related to the RIF notification letter because the Defendant's issuance of the RIF notification letter was the result of its RIF process."  Docket No. 27, at 6.  Dr. Lau emphasizes the liberal standard adopted by the Eighth Circuit: "administrative remedies [are] exhausted as to

---

[1] The parties' exhibits are unclear as to what the Formal Complaint *actually* says. In the attached Formal Complaint, Document No. 20-2, Dr. Lau complains of a "termination/separation" and "performance appraisal evaluation." Next to each, Dr. Lau wrote "see attached narrative." Id. at 2. But there is no narrative attached to Document No. 20-2. There is, however, a narrative attached to Dr. Lau's Equal Employment Opportunity Counselor's Report, Docket No. 20-1, which tracks the language DHHS quotes. Because neither party disputes the characterization of the Formal Complaint found at Document No. 20, at 2, the court will accept that description as true.

all incidents of discrimination that are 'like or reasonably related to the allegations of the [administrative] charge.' " Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994) (quoting Anderson v. Block, 807 F.2d 145, 148 (8th Cir. 1986) (alteration in original)).  Accordingly, "the scope of the civil suit may be as broad as the scope of the [administrative] investigation could reasonably be expected to grow out of the charge of discrimination." Id. (citation and internal quotation marks omitted) (alteration in original).

The court agrees with DHHS that most of Dr. Lau's claims are not administratively exhausted.  The requirement of administrative exhaustion is not a technicality; rather, it "is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994).  Although courts will liberally construe an administrative charge for purposes of exhaustion, the Eighth Circuit has recognized that "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996) (citation and internal quotation marks omitted).  Indeed, the Eighth Circuit has observed that "our court has narrowed its view of what subsequent acts are sufficiently related to be within the scope of the properly filed administrative charges," albeit without abandoning "the theory that reasonably related subsequent acts

13

may be considered exhausted." <u>Wedow v. City of Kansas City</u>, 442 F.3d 661, 673 (8th Cir. 2006).

Dr. Lau's case is similar to <u>Williams v. Little Rock Municipal Water Works</u>.  There, a Black employee filed a charge with the EEOC after being denied a promotion.  21 F.3d at 221.  The employee's EEOC complaint alleged that her employer retaliated against her, but made no reference to race discrimination.  <u>Id.</u> at 222.  Despite that, the employee sued for race discrimination in district court, arguing that her claim for race discrimination was "like or reasonably related" to the retaliation claim.  <u>Id.</u>  Because the employee had previously filed an EEOC complaint for race discrimination and claimed that she was retaliated against because of that complaint, she contended that her claim for retaliation necessarily included a claim for race discrimination.  <u>Id.</u>

The court disagreed.  It reasoned that the employee's "claims of race discrimination are separate and distinct from her claims of retaliation."  <u>Id.</u> at 223.  Accordingly, the court held that the employee's claim for race discrimination was not administratively exhausted, and therefore the district court did not err by granting summary judgment against the employee.  <u>Id.</u>

Likewise, the Eighth Circuit rejected a claim like Dr. Lau's in <u>Parisi v. Boeing Co.</u>  There, an employee filed an administrative charge with the EEOC, alleging that Boeing discriminated against him on the basis of age by terminating him and failing to rehire him for another position.  400 F.3d at

14

584.  On his administrative charge, the employee mentioned only one incident in which he applied for a position at Boeing and was rejected, occurring in January 2001.  Id.  After receiving a right to sue letter, the employee sued Boeing, alleging that after January 2001 he applied for 94 other jobs at Boeing and was repeatedly denied employment.  Id. at 584-85.  The employee argued that his post-January 2001 claims of failure to rehire were administratively exhausted because Boeing's post-January 2001 failures to rehire were "no broader than the EEOC investigation that reasonably could be expected to grow out of his administrative charge."  Id. at 585.

The Eighth Circuit rejected that argument.  The court first noted that the employee "did not mention in the administrative charge any other incident [besides the January 2001 failure to rehire] in which he applied for a job opening at Boeing and was rejected."  Id.  Because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice," the court held that the employee's "claims of discriminatory refusal to rehire arising after January . . . 2001, are not like or reasonably related to the claims in his administrative charge," and therefore were not procedurally exhausted.  Id. at 586.

So too with Dr. Lau's complaint.  Dr. Lau argues that "the initiation of the RIF process and the RIF process are necessarily related to the RIF notification letter because the Defendant's issuance of the RIF notification letter was the result of its RIF process."  Docket No. 27, at 6.  But that logic

15

mirrors the arguments that the Eighth Circuit rejected in both Williams and Parisi.  To preserve his challenges to the RIF process, Dr. Lau needed to specifically mention them in his EEOC complaint.  See Williams, 21 F.3d at 222 (finding claim of race discrimination unexhausted where an EEOC complaint made "no reference to race discrimination but [was] confined to retaliation").

Dr. Lau contends that his complaint should not be limited to challenging the sufficiency of the RIF notice because, as he claims, "[t]he Eighth Circuit has repeatedly held that a subsequently-filed lawsuit is not required to mirror the administrative charges."  Docket No. 27, at 6.  As support, Dr. Lau cites Wedow v. City of Kansas City, 442 F.3d 661, 674 (8th Cir. 2006) and Nichols v. American National Insurance Co., 154 F.3d 875, 886 (8th Cir. 1998).  But neither of those cases stand for the proposition that a lawsuit can allege new claims completely untethered from an EEOC charge.  The relevant portion of Wedow states that "[w]e do not require that subsequently-filed lawsuits mirror the administrative charges *as long as* the sweep of any subsequent judicial complaint is no broader than the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed in the EEOC complaint." 442 F.3d at 674 (citation and internal quotation marks omitted, emphasis added).  But, just as in Williams and Parisi, Dr. Lau's challenges to the RIF process in district court are broader than the scope of the EEOC investigation which could reasonably be expected to grow out of the EEOC complaint.

Nichols is similarly unhelpful.  See Nichols, 154 F.3d at 887 ("Where, as here, a court has determined that a plaintiff's case described a continuing violation, allegations that fall within the scope of the discriminatory pattern are treated as 'like or related' to that claim.").  Nowhere does Dr. Lau allege that DHHS's initiation and processing of the RIF should be considered a "continuing violation" stemming from the RIF notice letter.

Dr. Lau's EEOC complaint only challenged the August 31, 2020, letter in which IHS explained the abolishment of his federal position and that he would be separated from federal service.  Dr. Lau did not challenge the initiation of the RIF process or the sufficiency of that process when he filed his Formal Complaint with the EEOC.  Accordingly, the court finds that the latter claims are not administratively exhausted and will limit Dr. Lau's claims to his challenge of the sufficiency of the notification letter.

**E. Motion to Dismiss for Failure to State a Claim**

DHHS argues that Dr. Lau's complaint should also be dismissed because "all allegations describe conduct by the Tribe and not [DHHS]."  Docket No. 18, at 11 (capitals omitted).

Congress has exempted Indian tribes from the definition of "employer" as used in Title VII and the ADA.  See 42 U.S.C. § 2000e(b) (noting that the term employer "does not include . . . an Indian tribe"); 42 U.S.C. § 12111(5)(B)(i) (noting that the term employer in the Americans with Disabilities Act "does not include . . . an Indian tribe").  Additionally, Congress

17

has not waived tribal sovereign immunity for claims under the ADEA or Rehabilitation Act.  See EEOC v. Fond du Lac Heavy Equip. & Constr. Co., 986 F.2d 246, 251 (8th Cir. 1993) (holding that the ADEA lacked a "clear and plain" congressional intent to allow suit against Indian tribes under the ADEA and thus tribal sovereign immunity barred jurisdiction over such claims); see Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1291-92 (11th Cir. 2001) (holding that tribes have sovereign immunity with respect to Rehabilitation Act claims).  Accordingly, Dr. Lau must assert a plausible claim against DHHS itself, not the Tribe.

According to DHHS, "all [Lau's] claims rest *only* on allegedly discriminatory practices of tribal employees at the Winnebago Hospital," and should therefore be dismissed.  Docket No. 18, at 12-13.  The problem is that Rule 12(b)(6) dictates that the court cannot consider much of the evidence DHHS is citing.  Take, for instance, DHHS's claim that "to be held liable, IHS either must have participated directly in the discrimination or have known about the Tribe's discrimination and failed to undertake prompt corrective action within its control."  Id. at 14.  As support, DHHS cites to the declaration of Debrah Sims.[2]  But as discussed above, self-serving declarations by the movant may not be considered on a motion to dismiss under Rule 12(b)(6).  See

---

[2] DHHS also cites to an administrative law judge order, which it does throughout its briefing.  But such orders are non-precedential and unpersuasive to this court.  See Almy v. Sebelius, 749 F. Supp. 2d 315, 326 (D. Md. 2010), on reconsideration (Oct. 29, 2010), aff'd, 679 F.3d 297 (4th Cir. 2012) ("Nevertheless, it is undisputed that lower-level decisions rendered by . . . ALJs are non-precedential.").

Shears-Barnes, 2021 WL 1201671, at *2 ("The Court further agrees that Ms. Shears-Barnes's Declaration cannot be considered on the Motion to Dismiss."); see also Midwest Disability Initiative v. JANS Enters., Inc., 929 F.3d 603, 609 (8th Cir. 2019) ("Had the district court considered these declarations, it would have been required to treat the motion to dismiss as one for summary judgment.").

DHHS also contends that

> When an Indian Tribe terminates a special purpose IPA agreement, the RIF and resulting separation are unavoidable due to the lack of federal positions after the Tribe assumes control of the hospital. As such, even if Dr. Lau had reported discrimination while his IPA Agreement was in place, IHS's only legal option would have been to remove Dr. Lau from the assignment by terminating the IPA Agreement, which would have triggered the RIF and led to the same result.

Docket No. 18, at 14.  But DHHS's only support for that proposition is the declaration of Troy Bad Moccasin, which the court cannot consider on a motion to dismiss.

Accordingly, the court will consider only Dr. Lau's complaints and the documents it necessarily embraces.  Zean, 858 F.3d at 526.  Dr. Lau's complaint alleges that "[t]he Tribe could not terminate Lau's employment with the Agency because Lau was a federal employee," and that "IHS initiated a reduction in force (RIF) for Lau.  The RIF consisted of only one employee, Lau, and informed him he would be separated from federal service on November 22, 2020."  Docket No. 1, at 7.  Nothing in Dr. Lau's complaint indicates that "all

[Lau's] claims rest *only* on allegedly discriminatory practices of tribal employees at the Winnebago Hospital," Docket No. 18, at 13, or that "even if Dr. Lau had reported discrimination while his IPA Agreement was in place, IHS's only legal option would have been to remove Dr. Lau from the assignment by terminating the IPA Agreement, which would have triggered the RIF and led to the same result." Id. at 14. Accordingly, the court finds that Dr. Lau has plausibly alleged claims of employment discrimination against DHHS.

DHHS argues that a different result is required by Charboneau v. Azar, No. CIV-20-0553-HE, 2021 WL 5992285 (W.D. Okla. Apr. 23, 2021). There, an IHS employee was detailed to a Cherokee Nation hospital on a Special Purpose Assignment Agreement after the Cherokee Nation took over management and operation of the hospital. Id. at *1. Eventually, the Cherokee Nation elected to terminate the IPA arrangement, and DHHS gave the employee notice that he was subject to reduction in force procedures based on the termination of the agreement. Id.

The employee sued DHHS, alleging various claims for employment discrimination. Id. In a single paragraph, the court held that the employee's claims should be dismissed under Rule 12(b)(6):

> Over and apart from exhaustion issues, however, plaintiff's claims fail because they do not state a claim against DHHS. The allegations of gender discrimination, age discrimination, and handicap/disability discrimination that are the basis for counts one, two, three, and eight relate to actions allegedly taken by the Hospital and its managers, not DHHS. The complaint includes a conclusory allegation that DHHS conspired with Hastings to discriminate against plaintiff, but there are no facts alleged which

20

> plausibly support any such conspiracy or which suggest that the
> actions of DHHS were anything other than consistent with the
> IPA/compacting arrangement between it and the Cherokee Nation.
> Moreover, plaintiff provides no authority to suggest that DHHS is
> somehow automatically liable for discriminatory actions taken by
> the Cherokee Nation and a basis for such a conclusion is not
> otherwise apparent.

Id. at *2.

The court respectfully disagrees. First, the Western District of Oklahoma is outside the Eighth Circuit, so Charboneau is of limited precedential and persuasive value.  Second, there is nothing in Dr. Lau's complaint dictating that the Tribe alone was responsible for his termination.  Indeed, the complaint specifically alleges that "[t]he Tribe could not terminate Lau's employment with the Agency because Lau was a federal employee," and that "IHS initiated a [RIF] for Lau."  Docket No. 1, at 7.  Accordingly, the complaint plausibly alleges that IHS—and not the Tribe—terminated Dr. Lau's employment for discriminatory reasons.  That is all that is needed at the motion to dismiss stage.

Because Dr. Lau has plausibly alleged a claim of employment discrimination against DHHS, the court denies DHHS's motion to dismiss for failure to state a claim.  However, due to Dr. Lau's failure to administratively exhaust most of his claims, supra at 11-18, only Dr. Lau's challenge to the sufficiency of the notification letter may be considered.

**CONCLUSION**

Based on the foregoing facts, law and analysis, the court hereby

21

DENIES Defendant's motion to dismiss Plaintiff's complaint, Docket No. 17. Dr. Lau's administratively exhausted challenge to the sufficiency of his notification letter is allowed to proceed.

It is further ORDERED that Defendant's answer shall be filed no later than 14 days from today's date pursuant to Fed. R. Civ. P. 12(a)(4)(A).

DATED this 27th day of August, 2024.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge