UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KIM LAU,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DOROTHY FINK, Acting Secretary U.S.<br>Department of Health and Human<br>Services,<br><br>                    Defendant. | 4:24-CV-04063-VLD<br><br><br>AMENDED ORDER DENYING<br>DEFENDANT'S MOTION TO DISMISS<br><br>DOCKET NO. 17 |

**INTRODUCTION**

The matter before the court is plaintiff Kim Lau's complaint alleging that defendant Dorothy Fink,[1] Acting Secretary of U.S. Department of Health and Human Services (DHHS), engaged in disability discrimination, age discrimination, race discrimination, and national origin discrimination.  See Docket No. 1, at 8-10.  Pending is DHHS's motion to dismiss.  Docket No. 17.

---

[1] Defendant Xavier Becarra is substituted with Dorothy Fink pursuant to Federal Rule of Civil Procedure 25(d), which provides that an "officer's successor is automatically substituted as a party," and "[t]he court may order substitution at any time[.]"  The court takes judicial notice that Dorothy Fink is serving as the Acting Secretary of the Department of Health and Human Services.  *Dorothy Fink*, U.S. DEP'T OF HEALTH AND HUM. SERVS., https://www.hhs.gov/about/leadership/dorothy-fink.html (last visited February 4, 2025).

The parties have consented to this magistrate judge handling their case pursuant to 28 U.S.C. § 636(c).

## FACTS

The following facts are drawn from plaintiff's complaint.  See Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 365 (8th Cir. 2011) (citation omitted) (noting that courts are "bound to accept as true, for purposes of [a Rule 12(b)(6)] motion, the facts alleged by the plaintiff") (alteration in original).  No imprimatur of the accuracy of these facts is intended by the court.

Dr. Kim Lau is an Asian Doctor of Podiatric Medicine who at the below-described relevant time frame was over the age of 40.  Docket No. 1, at 3.  His national origin is Chinese.  After practicing medicine in private practice for 11 years, in October 2017, Dr. Kim Lau accepted a position with the Department of Health and Human Services working in the Winnebago Indian Health Service Hospital (WIHSH) in Winnebago, Nebraska.  Id. at 2-3.  Dr. Lau worked Monday through Thursday each week for 10-hour or more shifts.  Id. at 3.  In January 2018, Dr. Lau received a performance evaluation rating him at 4 out of 5.  Id. at 3-4.

In June 2018, Dr. Lau's supervisor changed to Dr. Lynelle Noisy Hawk, M.D.  Id. at 4.  During that same summer of 2018, the Indian Health Service (IHS), an agency of DHHS, ceded control of the hospital and the Winnebago Tribe of Nebraska took over all operations pursuant to the Indian Self-Determination and Education Assistance Act of 1975 (ISDEAA).  Id. at 3-4. From that point forward, WIHSH operated under the Winnebago

Comprehensive Healthcare System (WCHS), an entity formed by the Tribal council.  Id. at 4.  WCHS renamed WIHSH to Twelve Clans Unity Hospital (TCUH).  Id.

Upon WCHS taking control of the hospital, most IHS employees were converted to Tribal employees, while others were allowed to remain IHS employees detailed to the tribe under special purpose Intergovernmental Personnel Agreements (IPA).  Id.  Dr. Lau elected to remain a Title 38 employee of IHS detailed to the tribe under a special purpose IPA.  Id.  Dr. Lau was the only podiatrist at the time control of the hospital changed from IHS to the tribe. Id.  Dr. Lau was assigned two federal supervisors who were federal employees with IHS, one of whom was CMDR Matthew McClung, Pharm. D.  Id.

In 2019 and 2020, Dr. Noisy Hawk rated Dr. Lau above a 4.5 rating in separate performance evaluations.  Id.  At the beginning of June 2020, Dr. Noisy Hawk left the hospital's employ and Dr. Lau's new supervisor became Dr. Carl Sirio.  Id. at 5.

In mid-July 2020, Dr. Sirio, hospital COO Laura Gamble, and HR director Sandy Francis approached Dr. Lau.  Id. at 5.  They told Dr. Lau that they were concerned about his ability to stay focused and meet the needs of patients.  Id.  On Thursday, July 23, Sirio, Gamble, and Francis gave Dr. Lau a Memorandum of Expectations (MOE) outlining many of the same concerns.  Id. In particular, the MOE cited a concern about "[u]nderperformance in clinical productivity in part a result of focus and workflow."  Id.  The MOE required Dr. Lau to "[s]chedule and complete . . . a mandatory meeting the WCHS

3

Employee Assistance Program [] provider"; to work with Gamble and Sirio "to create a scheduling system to increase productivity and client numbers in the podiatry department"; "[c]ompile and discuss recommendations with specific details and timelines to increase processes, efficiencies and quality within the podiatry department"; and to "[c]reate quantifiable goals to begin monitoring and improving performance thresholds." Id. No timeframe was set forth in the MOE for the accomplishment of the goals articulated therein. Id. at 6.

Dr. Lau's next day at work after July 23 was Monday, July 27. C.f. id. at 5-6. On July 28, Dr. Lau called out sick due to pain in his chest and dizziness. Id. at 6. He was medically excused from work by his primary care physician for the remainder of the week. Id. Dr. Lau returned to work August 3 and worked his normal four-day, 10-hour shifts through August 13. Id. On August 14, 2020, Dr. Lau underwent an echocardiogram and cardiac stress tests which diagnosed him as having a blockage in his left anterior descending artery. Id. Dr. Lau was immediately admitted to the hospital, and shortly thereafter underwent a cardiac catheterization to remove the blockage. Id. He remained on medical leave the remainder of the month of August until the 31st. Id. at 7.

While he was on medical leave, the tribe issued Dr. Lau a letter on August 24, 2020, telling him that it was terminating his IPA agreement effective immediately. Docket No. 22-2. Dr. Lau asserted in his formal charge of discrimination that the tribe terminated his IPA for the pretextual reason that he was not meeting the goals set forth in the July 23 MOE. Docket No. 20-1 at 3.

4

Upon returning to work on August 31, Dr. Lau met with Gamble, Sirio, Francis, and his federal IHS supervisor McClung. Docket No. 1, at 4, 7. McClung was aware that Dr. Lau was only just then returning from medical leave due to his heart procedure. Id. at 7. At the meeting, Gamble told Dr. Lau that he was relieved of all of his responsibilities and duties, he was on administrative leave for 60 days, and his special purpose IPA was terminated effective immediately. Id. at 7. Dr. Lau had worked only 10 days following the issuance of the MOE on July 23. C.f. id. at 5-7. The days he did not work he was on approved medical leave. C.f. id. at 6-7.

The tribe transmitted notice to IHS that it had terminated Dr. Lau's special purpose IPA. Id. at 7. The IHS then initiated a reduction in force (RIF) which consisted of a single employee—Dr. Lau. Id. Dr. Lau's federal employment terminated November 22, 2020. Id.

Dr. Lau's IPA contract required any termination to be preceded by a 90-day notice period. See Docket No. 22-1 at 5. Thus, the November 22, 2020, date of termination stemmed from the August 24 termination of his IPA, not from the August 31 meeting. The IPA provided that Dr. Lau would be supervised by a tribal supervisor in conjunction with a federal supervisor. Id. at 3. In addition, Dr. Lau's IPA also specified that upon termination of the IPA Dr. Lau could accept reassignment to an IHS facility if a position at an IHS facility was available. Id. at 2. Dr. Lau alleges that he was replaced by a white, non-disabled podiatrist under 40 years old. Id.

On October 14, Dr. Lau requested Equal Employment Opportunity (EEO) counseling.  He identified the TCUH as the place where the allegations occurred; employees Laura Gamble, Danelle Smith, and Carl Sirio, as the responsible management officials (RMOs); and both the tribe and DHHS as the organizations alleged to have discriminated against him.  See Docket No. 20-1, at 6, 8, 15-16.  On December 3, after the conclusion of EEO counseling, Dr. Lau filed a formal complaint of discrimination.  See Docket No. 20-2.  In his formal complaint, Dr. Lau alleged that DHHS and the tribe and its employees discriminated against him because of his national origin, race, age, and disability between July 23, 2020, and his termination, effective on November 22, 2020.  Id. at 1-3.

On December 29, 2021, IHS accepted five claims for investigation.

1.  On July 23, 2020, Complainant met with direct supervisor Dr. Carl Sirio, Laura Gamble (Chief Operating Officer) and Sandy Francis (HR Director) and was issued a Memorandum of Expectations.

2.  Complainant alleges that claims (based on performance and behavior) made in the Memorandum of Expectations were false and stress from the claims triggered several medical issues to where Complainant was medically excused from work by cardiologist for one week and then hospitalized.

3.  On August 24, 2020, Complainant received a second Letter of Memorandum that said that Complainant was continuing to fail to meet expectations inadequately cited from previous Letter of Memorandum.

4.  On August 24, 2020, Complainant received a letter from Danelle Smith (Chief Executive Officer of Winnebago Comprehensive Healthcare System) stated [sic] that the Winnebago Tribe of Nebraska has terminated the IPA Agreement with Complainant in Podiatrist position and placed [sic] on paid Administrative Leave as of November 22, 2020.

5. On August 31, 2020, Complainant received a letter from HHS Public Health Service (IHS) notifying Complainant that [sic] position had been abolished and Complainant would be separated from the government November 22, 2020.

Docket No. 20-3, at 1.

On February 17, 2022, IHS issued a final agency decision dismissing Dr. Lau's complaint for failure to state a claim. Docket No. 20-4. IHS explained that Dr. Lau was not "aggrieved" because IHS could offer no relief, since "tribal assumption of a [hospital] is something the IHS cannot stop, challenge, impact, or change." Id. at 2-3.

Dr. Lau appealed that ruling to the EEOC Office of Federal Operations (OFO), which reversed and remanded for further consideration. Docket No. 20-5, at 1, 4. The EEOC OFO found that Dr. Lau had asserted a claim against the federal agency, not just the tribe. Id. at 3. Furthermore, the EEOC OFO found that Dr. Lau alleged *his federal employer* discriminated against him on the basis of his race, national origin, age and disabling condition. Id. The EEOC OFO also rejected the lower decision-maker's representation that it was powerless to provide a remedy to Dr. Lau, noting that, although it may not be able to offer Dr. Lau his specific job back at the tribe's hospital, it could still award him backpay and other remedies and may be able to offer him a position at another IHS facility within its control. Id. at 3, 3 n.2.

On August 30, 2022, IHS issued another acceptance letter, accepting the same five claims for investigation. Docket No. 20-6, at 1. On October 12, 2023, an EEOC judge dismissed Dr. Lau's claims. Docket No. 20-7, at 5. The administrative judge dismissed claims 1-4 for untimely contact with an EEO

counselor and dismissed all five claims on the ground that Dr. Lau failed to state a claim.  Id. at 3-5.  On December 14, 2023, the agency issued a final order adopting the EEOC judge's decision.  Docket No. 20-8.

Dr. Lau brought this lawsuit against DHHS, alleging claims for: (1) disability discrimination under the Rehabilitation Act; (2) age discrimination under the Age Discrimination in Employment Act (ADEA); (3) race discrimination under Title VII; and (4) national origin discrimination under Title VII, all of which he relates to the termination of his federal employment. Docket No. 1 at 1, 8-10.  DHHS now moves to dismiss for failure to state a claim and for lack of jurisdiction.  See Docket No. 17.

## DISCUSSION

DHHS argues two different bases for its motion to dismiss: Federal Rule of Civil Procedure 12(b)(1), which provides for dismissal based on lack of jurisdiction, and Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal for failure to state a claim on which relief can be granted.  These two rules entail different limitations on what evidence may be considered.

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert the defense of lack of subject-matter jurisdiction.  "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' " on jurisdiction.  Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  "In a facial attack, 'a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction.' "  Davis v.

8

Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (quoting Kerns v. United

States, 585 F.3d 187, 193 (4th Cir. 2009)).  "In a facial attack, 'the court

restricts itself to the face of the pleadings, and the non-moving party receives

the same protections as it would defending against a motion brought under

Rule 12(b)(6).' "  Id. (quoting Osborn, 918 F.2d at 729 n.6).

    The court interprets DHHS's Rule 12(b)(1) challenge as a factual attack

because DHHS "challenges the veracity of the facts underpinning subject

matter jurisdiction" rather than relying on the facts as alleged in the complaint.

See Kerns, 585 F.3d at 193.  "In a factual attack, the court considers matters

outside the pleadings, and the non-moving party does not have the benefit of

12(b)(6) safeguards."  Davis, 886 F.3d at 679 (quoting Osborn, 918 F.2d at 729

n.6).  "Because at issue in a factual 12(b)(1) motion is the trial court's

jurisdiction—its very power to hear the case—there is substantial authority

that the trial court is free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case."  Osborn, 918 F.2d at 730 (quoting

Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

    Federal Rule of Civil Procedure 12(b)(6) allows a party to assert the

defense that a complaint fails to state a claim upon which relief can be granted.

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to

relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  In evaluating a defendant's 12(b)(6) motion, the court accepts "the

facts alleged in the complaint as true and grant[s] all reasonable inferences in

9

favor of . . . the nonmoving party." <u>Stufflebeam v. Harris</u>, 521 F.3d 884, 886

(8th Cir. 2008). While courts must accept a plaintiff's factual allegations as

true, they "are not required to accept a plaintiff's legal conclusions." <u>Brown v.</u>

<u>Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010) (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009) (citation omitted).

Generally, on a Rule 12(b)(6) motion to dismiss, a court "must ignore

materials outside the pleadings, but it may consider some materials that are

part of the public record or do not contradict the complaint, as well as

materials that are necessarily embraced by the pleadings." <u>Porous Media Corp.</u>

<u>v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999) (quotations omitted). "The

purpose of this rule is to prevent a plaintiff from avoiding an otherwise proper

motion to dismiss by failing to attach to the complaint documents upon which

it relies." <u>Viera v. Young</u>, No. 4:16-CV-04146-KES, 2017 WL 3447608, at *3

(D.S.D. June 28, 2017), <u>adopted</u>, 2017 WL 3437668 (D.S.D. Aug. 10, 2017)

(quotations omitted).

## C.    Standard Applicable to Dr. Lau's Complaint

In its Brief in Support of Defendant's Motion to Dismiss, DHHS invokes

Federal Rule of Civil Procedure 12(b)(1). Docket No. 18, at 7. Yet in its reply

brief, DHHS expressly disclaims reliance on Rule 12(b)(1). Docket No. 30, at 2

n.1 ("Defendant agrees with Dr. Lau that dismissal may not be appropriate

under Rule 12(b)(1), but dismissal is appropriate under 12(b)(6)."). Regardless

of any disclaimer by DHHS, the court is prohibited from considering DHHS's

procedural exhaustion argument under Rule 12(b)(1).  "Title VII's charge-filing

requirement is not of jurisdictional cast."  <u>Fort Bend Cnty. v. Davis</u>, 587 U.S.

541, 550 (2019).  Accordingly, the court has subject-matter jurisdiction over

Dr. Lau's complaint even assuming Dr. Lau failed to administratively exhaust

his claims.  <u>See</u> <u>Francisco v. Cooper Tire & Rubber Co.</u>, No. 4:19-CV-4058,

2019 WL 3937638, at *3 (W.D. Ark. Aug. 20, 2019) ("A plaintiff's failure to

comply with the Title VII charge-filing requirement has no impact on a district

court's subject matter jurisdiction.").

      The court will therefore consider both bases of DHHS's motion to dismiss

(lack of administrative exhaustion and failure to state a claim) under Rule

12(b)(6).  That has important implications for what evidence the court may

consider in ruling on DHHS's motion.  While a court may consider matters

outside the pleadings on a Rule 12(b)(1) motion, <u>see</u> <u>Kerns</u>, 585 F.3d at 193, it

may not do so in the Rule 12(b)(6) context, <u>see</u> <u>Enervations, Inc. v. Minnesota</u>

<u>Mining & Mfg. Co.</u>, 380 F.3d 1066, 1069 (8th Cir. 2004).

      Importantly, "documents necessarily embraced by the complaint are not

matters outside the pleading."  <u>Zean v. Fairview Health Servs.</u>, 858 F.3d 520,

526 (8th Cir. 2017) (quoting <u>Enervations</u>, 380 F.3d at 1069)).  Nor does a

document need to be physically attached to the complaint to be considered.

<u>See</u> <u>Ashanti v. City of Golden Valley</u>, 666 F.3d 1148, 1151 (8th Cir. 2012)

("Documents necessarily embraced by the pleadings include 'documents whose

contents are alleged in a complaint and whose authenticity no party questions,

but which are not physically attached to the pleadings.' ") (quoting <u>Kushner v. Beverly Enters., Inc.</u>, 317 F.3d 820, 831 (8th Cir. 2003)).

There are several documents outside the pleadings upon which DHHS relies.  For instance, DHHS relies extensively on the declarations of Debra Sims, Melissa Loebs, and Troy Bad Moccasin.  Docket Nos. 20, 21, & 22.  The court may not rely on those documents.  <u>See, e.g.</u>, <u>Shears-Barnes v. Acurian, Inc.</u>, No. 4:20-CV-00161-LPR, 2021 WL 1201671, at *2-4 (E.D. Ark. Mar. 29, 2021) (holding that a declaration and corresponding exhibits were not necessarily embraced by the pleadings and therefore could not be considered on a motion to dismiss).

So, what can the court consider on DHHS's motion to dismiss?  Of course, the court may consider Dr. Lau's complaint itself.  The court may also consider documents attached to the complaint.  <u>Owen v. Gen. Motors Corp.</u>, 533 F.3d 913, 918 (8th Cir. 2008) (quoting <u>Great Plains Tr. Co. v. Union Pac. R. Co.</u>, 492 F.3d 986, 990 (8th Cir. 2007)).  "Also, since district courts may take judicial notice of public records, they may properly consider public records on a motion to dismiss."  <u>United States v. Fink</u>, 393 F. Supp. 2d 935, 939 (D.S.D. 2005) (citations omitted).

Accordingly, the court will consider: (1) Dr. Lau's complaint, Docket No. 1; (2) Dr. Lau's EEOC Counselor's Report, Docket No. 20-1; (3) Dr. Lau's IHS Complaint Form for Employment Discrimination, Docket No. 20-2 and Docket No. 20-1, at 3; (4) Dr. Lau's DHHS IHS Final Agency Decision, Docket No. 20-4; (5) Dr. Lau's EEOC Appeal Order, Docket No. 20-5; (6) Dr. Lau's Notice of

Acceptance of Claims, Docket No. 20-6; (7) Dr. Lau's EEOC Order of Dismissal,
Docket No. 20-7; (8) Dr. Lau's Special Purpose Assignment Agreement, Docket
No. 22-1; (9) Dr. Lau's TCUH notice of termination of that agreement, Docket
No. 22-2; and (10) Dr. Lau's Notice of Reduction in Force (RIF), Docket
No. 22-3.

**D.      Motion to Dismiss for Failure to Administratively Exhaust**

"Administrative remedies must be exhausted before a federal employee
may bring an employment discrimination claim against a federal employer."
McAlister v. Sec'y of Dep't of Health & Hum. Servs., 900 F.2d 157, 158 (8th Cir.
1990). This rule applies to Dr. Lau's claims under the Rehabilitation Act,
ADEA, and Title VII. See, e.g., Nelson v. Charles City Cmty. Sch. Dist., 900
F.3d 587, 591 (8th Cir. 2018) (noting that the exhaustion requirement "also
applies where a plaintiff brings a claim under . . . the Rehabilitation Act");
Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005) ("Exhaustion of
administrative remedies is a condition precedent to the filing of an action under
the ADEA in federal court."); Williams v. Little Rock Mun. Water Works, 21
F.3d 218, 222 (8th Cir. 1994) ("Exhaustion of administrative remedies is
central to Title VII's statutory scheme . . . .").

The requirement of administrative exhaustion is not a technicality;
rather, it "is central to Title VII's statutory scheme because it provides the
EEOC the first opportunity to investigate discriminatory practices and enables
it to perform its roles of obtaining voluntary compliance and promoting
conciliatory efforts." Williams v. Little Rock Mun. Water Works, 21 F.3d 218,

222 (8th Cir. 1994).  While courts in this circuit "will liberally construe an
administrative charge for exhaustion of remedies purposes, [they] also
recognize that there is a difference between liberally reading a claim which
lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made."
Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005) (quotation omitted).

DHHS argues that Dr. Lau's "Formal Complaint" challenged only one IHS
action, namely:

> Complainant received a letter from [IHS] notifying Complainant
> that [sic] position had been abolished and Complainant would be
> separated from the government November 22, 2020.

Docket No. 18, at 10 (quoting Docket No. 20, at 2).  DHHS contends that while
Dr. Lau challenged an August 31, 2020, letter notifying him that his position
had been abolished and that he would be separated from the government,
Dr. Lau did not challenge the initiation of the RIF process or the sufficiency of
that process.  Id.  Accordingly, DHHS argues, Dr. Lau has not administratively
exhausted his challenges to the initiation of the RIF or the RIF process itself,
and therefore should be barred from bringing those claims.  Id. at 11.

DHHS's characterization of Dr. Lau's Formal Complaint is incorrect.
DHHS says that Dr. Lau only challenged receiving a letter notifying him that
his position had been abolished and that he would be separated from the
government.  Id. at 10.  But Dr. Lau's formal EEOC complaint challenges more
than that.  Under the prompt "Select the Issue(s)/Claim(s) Below That Best
Describe(s) Your Complaint," Dr. Lau checked the boxes for "Disciplinary
Action" and "Performance Appraisal/Evaluation."  Docket No. 20-2, at 2.  Next

14

to "Disciplinary Action," Dr. Lau wrote "Termination/Separation; see attached narrative." Id. The attached narrative states that "[t]he Winnebago Tribe's decision to terminate my IPA agreement, ***and DHHS's decision to separate me from federal employment***, were both made because of my national origin and race (which is Asian); because of my age (54); and because of my disability (heart condition)." Docket No. 20-1, at 3 (emphasis added).

The narrative Dr. Lau submitted to accompany his charge of discrimination is sufficient to put the government on notice of the claims against it. Dr. Lau clearly stated that he was challenging DHHS's decision to terminate his federal employment on the same unlawful bases he alleges in his complaint. That is enough to administratively exhaust all four counts included in Dr. Lau's complaint (disability discrimination, age discrimination, race discrimination, and national origin discrimination). See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994) ("[T]he scope of the civil suit may be as broad as the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination.") (quotations omitted, cleaned up).

DHHS's arguments to the contrary rest on a misreading of Dr. Lau's Formal Complaint. DHHS contends that

> Dr. Lau's Formal Complaint challenged an August 31, 2020, letter, issued after the completion of the RIF process, in which IHS explained the abolishment of his federal position (which occurred in 2018) and the fact that he would be separated from federal service. Dr. Lau did not challenge the initiation of the RIF process or the sufficiency of that process when he sought EEO counseling or filed his Formal Complaint.

15

Docket No. 18, at 10.  DHHS based this conclusion on the declaration of

Debrah Sims, rather than the formal complaint itself.  Id.  As stated above,

Dr. Lau's formal complaint expressly challenges "DHHS's decision to separate

[him] from federal employment" based on his "national origin and race . . .

age . . . and . . . disability."  Docket No. 20-1, at 3.

Because Dr. Lau's formal complaint mirrors his current claims, the court

finds that they are procedurally exhausted and will deny the motion to dismiss

on the basis of lack of administrative exhaustion.

## E.    Motion to Dismiss for Failure to State a Claim

DHHS argues that Dr. Lau's complaint should also be dismissed because

"all allegations describe conduct by the Tribe and not [DHHS]."  Docket No. 18,

at 11 (capitals omitted).

Congress has exempted Indian tribes from the definition of "employer"

as used in Title VII and the ADA.  See 42 U.S.C. § 2000e(b) (noting that the

term employer "does not include . . . an Indian tribe"); 42 U.S.C.

§ 12111(5)(B)(i) (noting that the term employer in the Americans with

Disabilities Act "does not include . . . an Indian tribe").  Additionally, Congress

has not waived tribal sovereign immunity for claims under the ADEA or

Rehabilitation Act.  See EEOC v. Fond du Lac Heavy Equip. & Constr. Co., 986

F.2d 246, 251 (8th Cir. 1993) (holding that the ADEA lacked a "clear and plain"

congressional intent to allow suit against Indian tribes under the ADEA and

thus tribal sovereign immunity barred jurisdiction over such claims); see

<u>Sanderlin v. Seminole Tribe of Fla.</u>, 243 F.3d 1282, 1291-92 (11th Cir. 2001)

(holding that tribes have sovereign immunity with respect to Rehabilitation Act

claims).  Accordingly, Dr. Lau must assert a plausible claim against DHHS

itself, not the tribe.

According to DHHS, "all [Lau's] claims rest *only* on allegedly

discriminatory practices of tribal employees at the Winnebago Hospital," and

should therefore be dismissed.  Docket No. 18, at 12-13.  The problem is that

Rule 12(b)(6) dictates that the court cannot consider much of the evidence

DHHS cites.  Take, for instance, DHHS's claim that "to be held liable, IHS

either must have participated directly in the discrimination or have known

about the tribe's discrimination and failed to undertake prompt corrective

action within its control."  <u>Id.</u> at 14.  As support, DHHS cites to the declaration

of Debrah Sims.[2]  But as discussed above, self-serving declarations by the

movant may not be considered on a motion to dismiss under Rule 12(b)(6).  <u>See</u>

<u>Shears-Barnes</u>, 2021 WL 1201671, at *2 ("The Court further agrees that Ms.

Shears-Barnes's Declaration cannot be considered on the Motion to Dismiss.");

<u>see also</u> <u>Midwest Disability Initiative v. JANS Enters., Inc.</u>, 929 F.3d 603, 609

(8th Cir. 2019) ("Had the district court considered these declarations, it would

---

[2] DHHS also cites to an administrative law judge order, which it does
throughout its briefing.  But such orders are non-precedential and
unpersuasive to this court.  <u>See</u> <u>Almy v. Sebelius</u>, 749 F. Supp. 2d 315, 326 (D.
Md. 2010), on reconsideration (Oct. 29, 2010), <u>aff'd</u>, 679 F.3d 297 (4th Cir.
2012) ("Nevertheless, it is undisputed that lower-level decisions rendered
by . . . ALJs are non-precedential.").

have been required to treat the motion to dismiss as one for summary

judgment.").

> DHHS also contends that
>
> When an Indian Tribe terminates a special purpose IPA agreement,
> the RIF and resulting separation are unavoidable due to the lack of
> federal positions after the Tribe assumes control of the hospital.
> As such, even if Dr. Lau had reported discrimination while his IPA
> Agreement was in place, IHS's only legal option would have been to
> remove Dr. Lau from the assignment by terminating the IPA
> Agreement, which would have triggered the RIF and led to the
> same result.

Docket No. 18, at 14. But DHHS's only support for that proposition is the

declaration of Troy Bad Moccasin, which the court cannot consider on a motion

to dismiss. The Bad Moccasin affidavit is contrary to the EEOC OFO's notation

that (1) Mr. Lau did assert a claim against DHHS, not just the tribe and

(2) DHHS was not powerless to remedy the alleged discrimination if it took

place—specifically that DHHS could have provided backpay and possibly could

have offered Dr. Lau a reassignment to another facility under DHHS's control.

See Docket No. 20-5 at 3, 3 n.2.

Accordingly, the court will consider only Dr. Lau's complaint and the

documents it necessarily embraces. Zean, 858 F.3d at 526. Dr. Lau's

complaint alleges that "[t]he Tribe could not terminate Lau's employment with

the Agency because Lau was a federal employee," and that "IHS initiated a

reduction in force (RIF) for Lau. The RIF consisted of only one employee, Lau,

and informed him he would be separated from federal service on November 22,

2020." Docket No. 1, at 7. Dr. Lau alleges that his DHHS supervisor was

present and took part in the August 31, 2020, termination meeting with

18

Dr. Lau knowing full well that Dr. Lau had just returned from medical leave. Id. at 7. The court rejects defendant's assertion that Dr. Lau's complaint indicates that "all [Lau's] claims rest *only* on allegedly discriminatory practices of tribal employees at the Winnebago Hospital," Docket No. 18, at 13, and that "even if Dr. Lau had reported discrimination while his IPA Agreement was in place, IHS's only legal option would have been to remove Dr. Lau from the assignment by terminating the IPA Agreement, which would have triggered the RIF and led to the same result." Id. at 14.

The court finds that Dr. Lau has plausibly alleged claims of employment discrimination against DHHS. DHHS may argue that Dr. Lau's claim that DHHS terminated him is implausible because Dr. Lau's "RIF and resulting separation [were] unavoidable due to the lack of federal positions after the Tribe assumes control of the hospital." Docket No. 18, at 14. But DHHS has provided nothing that the court may consider on a 12(b)(6) motion showing, for instance, that Dr. Lau could not have been transferred to *another* hospital. While DHHS may be able to prove that Dr. Lau's separation was unavoidable on a motion for summary judgment, it has not proven such at the motion to dismiss stage.

DHHS argues that a different result is required by Charboneau v. Azar, No. CIV-20-0553-HE, 2021 WL 5992285 (W.D. Okla. Apr. 23, 2021). There, an IHS employee was detailed to a Cherokee Nation hospital on a Special Purpose Assignment Agreement after the Cherokee Nation took over management and operation of the hospital. Id. at *1. Eventually, the Cherokee Nation elected to

19

terminate the IPA arrangement, and DHHS gave the employee notice that he was subject to reduction in force procedures based on the termination of the agreement.  Id.

The employee sued DHHS, alleging various claims for employment discrimination.  Id.  In a single paragraph, the court held that the employee's claims should be dismissed under Rule 12(b)(6):

> Over and apart from exhaustion issues, however, plaintiff's claims fail because they do not state a claim against DHHS.  The allegations of gender discrimination, age discrimination, and handicap/disability discrimination that are the basis for counts one, two, three, and eight relate to actions allegedly taken by the Hospital and its managers, not DHHS.  The complaint includes a conclusory allegation that DHHS conspired with Hastings to discriminate against plaintiff, but there are no facts alleged which plausibly support any such conspiracy or which suggest that the actions of DHHS were anything other than consistent with the IPA/compacting arrangement between it and the Cherokee Nation.  Moreover, plaintiff provides no authority to suggest that DHHS is somehow automatically liable for discriminatory actions taken by the Cherokee Nation and a basis for such a conclusion is not otherwise apparent.

Id. at *2.

The court finds Dr. Lau's case distinguishable.  As an initial matter, the Western District of Oklahoma is outside the Eighth Circuit, so Charboneau is of limited precedential and persuasive value.  Additionally, there is nothing in Dr. Lau's complaint dictating that the tribe alone was responsible for his termination.  Indeed, the complaint specifically alleges that "[t]he Tribe could not terminate Lau's employment with the Agency because Lau was a federal employee," and that "IHS initiated a [RIF] for Lau."  Docket No. 1, at 7.  As indicated above, Dr. Lau also alleged in his complaint that his DHHS

20

supervisor was part of the August 31 meeting at which he was told his IPA was being terminated.  Id.  Accordingly, the complaint plausibly alleges that IHS—and not the tribe—terminated Dr. Lau's employment for discriminatory reasons.  That is all that is needed at the motion to dismiss stage.

Because Dr. Lau has plausibly alleged a claim of employment discrimination against DHHS, the court denies DHHS's motion to dismiss for failure to state a claim.

## CONCLUSION

Based on the foregoing facts, law and analysis, the court hereby

DENIES Defendant's motion to dismiss Plaintiff's complaint, Docket No. 17.

DATED this 4th day of February, 2025.

BY THE COURT:

_____

VERONICA L. DUFFY
United States Magistrate Judge

21